NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BYRON HALSEY, : | |
| : | |
| Plaintiff, : | **Hon. Dennis M. Cavanaugh** |
| : | |
| v. : | **OPINION** |
| : | |
| FRANK PFEIFFER, et al., : | Civil Action No. 09-1138(DMC)(MF) |
| : | |
| Defendants. : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon three separate Motions for Summary Judgment filed by Defendant Frank Pfeiffer ("Pfeiffer"), Defendants John Propsner ("Propsner") and City of Plainfield ("Plainfield"), and Defendant Raymond Lynch ("Lynch"). (ECF Nos. 139, 140, 141). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' Motions are **granted.**

**I.    BACKGROUND[1]**

      Plaintiff Byron Halsey ("Plaintiff") asserts that he was unconstitutionally charged, arrested, prosecuted and convicted of the sexual assault and murder of his girlfriend's children. The children, Tina, age seven, and Tyrone, age eight, resided with their mother, Margaret Urquhart, and Plaintiff, who was their mother's boyfriend, in an apartment building in Plainfield, New Jersey. Plaintiff was arrested on November 17, 1985 and charged and subsequently indicted on a number of charges against the children including, two counts of First Degree Murder, two counts of felony murder, two counts of aggravated

---

[1] The facts in this section are taken from the parties' respective submissions.

sexual assault, one count of possession of a weapon with intent to use it unlawfully against another, and two counts of fourth degree child abuse. On March 18, 1988, after a trial by jury, Plaintiff was convicted of all the above counts except for one count of aggravated sexual assault and both counts of First Degree Murder. Plaintiff, who maintained his innocence at trail and continued to fight to prove his innocence throughout his incarceration, served twenty-one years in prison.

In 2006, DNA testing indicated that Plaintiff was, in fact, not the perpetrator of the assault and murders. Moreover, the testing actually inculpated Clifton Hall, a parolee with an extensive criminal history who was a neighbor and co-worker of Plaintiff.

Plaintiff contends that this miscarriage of justice was brought about by egregious misconduct of law enforcement officers. Plaintiff asserts that the police officers fabricated evidence, coerced a false confession and concealed evidence in violation of his constitutional rights. On March 11, 2009, Plaintiff initiated this suit. Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983 for fabrication and concealment of evidence and coercion (Counts I/III) and malicious prosecution (Counts II/III), against the particular individuals involved, and their supervisors. Plaintiff also brings § 1983 claims for failure to supervise, train, discipline, and screen such employees, and for maintaining unconstitutional customs, practices and/or policies (Count IV). Plaintiff also brings state law claims for malicious prosecution and violations of the Civil Rights Act, N.J.S.A. § 10:6-2, *et seq*. (Counts V/VI).

Pfeiffer, Lynch, Propsner and Plainfield all filed Motions for Summary Judgment and accompanying Briefs in Support on July 30, 2012. (ECF Nos. 139, 140, 141). Plaintiff filed a Consolidated Memorandum in Opposition ("Pl. Opp. Br.") to the Motions for Summary Judgment filed by Pfeiffer and Lynch on October 19, 2012. (ECF No. 145). Pfeiffer filed a Reply ("Pf. Rep. Br.") on November 30, 2012. (ECF No. 151). Lynch also filed a Reply ("Lynch Rep. Br.") on November 30, 2012.

2

(ECF No. 152). The matter is now before this Court.

**II.   STANDARD OF REVIEW**

**A. Summary Judgment**

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

**B. Qualified Immunity**

Qualified immunity is available to government officials performing discretionary functions.

3

Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982). It is an "entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001)(quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Issues regarding qualified immunity must be resolved at the earliest possible stage of litigation. Saucier, 533 U.S. at 201 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

To determine whether a government officer is entitled to qualified immunity, a two-part test applies. First, it must be determined if, "taken in the light most favorable to the party asserting the injury, .. the facts alleged show the officer's conduct violated a constitutional right." Saucier, 533 U.S. at 201. Second, the Court must ask whether the right is clearly established. Id. The second prong of the inquiry depends on the particular facts and circumstances of the case. To determine whether a right is clearly established, the Court asks whether a reasonable official, in the situation he confronted, would know that his conduct violated a constitutional right. Id. at 202. It is not necessary to reach the second part of the test if the facts alleged cannot support a claim for the violation of a constitutional right.

According to this standard, the Qualified Immunity doctrine "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violated the law." Orsatti v. New Jersey State Police, 71 F.3d 480 (3d Cir. 1995).

### III. DISCUSSION

**A. Plaintiff's Claims against Defendants John Propsner and the City of Plainfield**

As an initial matter, Propsner and Plainfield have jointly moved for Summary Judgment. Specifically, Propsner contends that he is entitled to qualified immunity, as there is no evidence in the record to establish that he violated any clearly established constitutional right. Additionally, Plainfield contends that Plaintiff cannot establish that Plainfield failed to properly supervise and train the Defendant

4

officers in this lawsuit. In his Opposition Brief, Plaintiff concedes that he does not oppose dismissal of his claims as to both of these Defendants. (Pl. Opp. Br. 4, fn.2). Accordingly, the Motion for Summary Judgment filed by Propsner and Plainfield is granted.

### B. Plaintiff's Claims against Defendants Pfeiffer and Lynch

#### i. Coercion Claim

Plaintiff alleges in Count I that Pfeiffer and Lynch engaged in coercive conduct that resulted in compelling Plaintiff to sign the Third Statement, a statement that inculpated him in the murder of two children. Conversely, Pfeiffer and Lynch assert that they are entitled to Qualified Immunity, as they violated no constitutional rights.

To determine the voluntariness of a confession, the court must consider the effect that the totality of the circumstances had upon the will of the defendant. Miller v. Fenton, 796 F.2d 598, 605 (3d Cir. 1986). The question in each case is whether a defendant's will was overborne when he confessed. Id. In making this determination, the factors to be considered include: the youth of the accused; his lack of education or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the depravation of food or sleep. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1873) (citations omitted). This approach requires "'the reviewing court to consider the specific tactics utilized by the police in eliciting the admissions, the details of the interrogation, and the characteristics of the accused. . . .'" Miller, 796 F.2d at 605 (quoting Rachlin v. United States, 723 F. 2d 1373, 1377 (8th Cir. 1983)).

However, the test for voluntariness "is not a but-for test: we do not ask whether the confession would have been made in the absence of the interrogation." Id. The United States Supreme Court has held that during an investigation, the police may use some psychological tactics in eliciting a statement from

a suspect. Id. (citing Haynes v. Washington). Such psychological ploys "may play a part in the suspect's decision to confess, but so long as that decision is a product of the suspect's own balancing of competing considerations, the confession is voluntary." Id. The question is thus whether an individual was so manipulated or coerced that the individual was "deprived [] of his ability to make an unconstrained, autonomous decision to confess." Id.

Plaintiff's own deposition testimony regarding the taking of the Third Statement, very clearly shows an absence of coercion by Pfeiffer and Lynch during the execution of the Third Statement, and also that Plaintiff was advised of his constitutional rights. The Third Statement was executed while Plaintiff was in police custody *after* being questioned and was signed in the presence of both Pfeiffer and Lynch. (emphasis added). Plaintiff concedes in his deposition that Pfeiffer read and explained Plaintiff his Miranda rights prior to questioning Plaintiff and prior to Plaintiff's executing the Third Statement. (Pfeiffer Brief ("Pf. Br."), ECF No. 139, Statement of Materials Facts ("Pf. SOMF"), ¶¶ 116, 117). Plaintiff signed and initialed a Miranda Rights Waiver prior to executing the Third Statement. (Pf. SOMF ¶ 116). As to the questioning conducted by Pfeiffer and Lynch, Plaintiff admitted in his deposition testimony that neither Pfeiffer nor Lynch ever threatened Plaintiff in any way, never made any promises to Plaintiff, never offered him any benefits or anything of value in exchange for his written statements, never used physical violence against him, nor did they deny him food, drink, use of the bathroom, or breaks. (Pf. SOMF ¶ 138). It is also of note, that at no time during the taking of the Third Statement, did Plaintiff ever ask to leave, for the questioning to cease, or for an attorney. (Pf. SOMF ¶ 139). These facts all weigh in favor of Pfeiffer and Lynch's position that they did not coerce or manipulate Plaintiff to induce him to sign the Third Statement.

Plaintiff further admits that he did not make any of the statements contained in the Third

Statements. Rather, he only signed the document after it was already drafted. (Pf. SOMF ¶ 128). It is also significant that Propsner, not Pfeiffer or Lynch, was responsible for reading the Third Statement aloud before Plaintiff signed it in his presence. (Propsner Brief, ECF No. 140, 11). At this time, Plaintiff could have objected to the Third Statement, informing Propsner that the words were not his own, or could have complained to Propsner about the manner in which Plaintiff was questioned by Pfeiffer, but Plaintiff did not. (Pf. Rep. Br. 6). Instead, Plaintiff signed the Third Statement, but goes on to say that he did so because he feared for his life. (Pf. SOMF ¶ 134). Plaintiff only states that he feared for his life because Pfeiffer and Lynch did not believe what Plaintiff was telling him. (Pf. SOMF ¶ 135). Again, Plaintiff does not provide any evidence of threats or coercion by Pfeiffer or Lynch to explain his statement that he feared for his life.

Neither Pfeiffer nor Lynch obtained Plaintiff's signature, and Plaintiff has now agreed to drop all charges against Propsner. Since the act of executing the Third Statement after Propsner read it to Plaintiff is the actual time when Plaintiff could have been coerced or manipulated into adopting the confession, and Plaintiff has agreed to dismiss all claims against Propsner, then considering the totality of the circumstances, Plaintiff has failed to show that either Pfeiffer or Lynch manipulated or coerced him in a way that deprived him of his ability to make an unconstrained, autonomous decision to sign the Third Statement. Thus, both Pfeiffer and Lynch are entitled to Qualified Immunity with regard to the coercion claims in Plaintiff's Complaint.

    **ii. Plaintiff's Malicious Prosecution Claim**

Plaintiff asserts in Count II of the Complaint that Pfeiffer and Lynch engaged in malicious prosecution resulting in Plaintiff's wrongful arrest without probable cause. Conversely both Pfeiffer and Lynch argue that they are entitled to qualified immunity, as the undisputed facts indicate that they did not

violate an clearly established right. (Pf. Br. 36, Lynch Brief, ECF No. 141, 35).

To present a prima facie case for malicious prosecution, a plaintiff must demonstrate that defendants: (1) initiated a criminal proceeding that; (2) ended in his favor, which was; (3) initiated without probable cause; and (4) for a malicious purpose (i.e., other than to bring him to justice). Rose v. Bartle, 871 F.2d 331, 349 (3d Cir. 1989). See also, Donahue v. Gavin, 280 F.3d 371, 379 (3d Cir. 2002) (citing Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996)). In addition to the state law elements of the tort, to succeed in a § 1983 claim for malicious prosecution, a plaintiff must also show a Fourth Amendment violation arising from an action occurring between arrest and trial. Donahue, 280 F.3d at 381.

Both Pfeiffer and Lynch concede that the first two prongs of this test have been met, and also that Plaintiffs claims of fabrication of evidence satisfy the malicious purpose element. However, Pfeiffer and Lynch argue that they were not the parties responsible for the initiation of the criminal proceedings, and that the initiation of the criminal proceedings was not without probable cause.

In this case, Assistant Prosecutor Hancock made the decision to initiate criminal proceedings. (Pf. SOMF ¶ 150). However, Assistant Prosecutor Hancock stated that he made the decision to prosecute prior to Plaintiff having signed the Third Statement. Assistant Prosecutor Hancock stated, at his deposition, that he made this decision approximately one hour and thirty minutes prior to Plaintiff's completing and signing the Third Statement, based on his belief that probable cause existed even without the Third Statement. (Pf. SOMF ¶¶ 151, 154). The Supreme Court has propounded that the decision to initiate a prosecution is a critical one. Rehberg v. Paulk, 132 S.Ct. 1497, 1507-08 (2012). However, the decision to initiate a prosecution, alone, does not end the inquiry. The Third Circuit has found an officer liable for malicious prosecution where the fabricated evidence influences the prosecutor's decision,

8

specifically by interfering "with the prosecutor's ability to exercise independent judgment in deciding whether or not to prosecute." However, there must be a showing that the misconduct significantly contributed to the decision to prosecute. Peterson v. Bernardi, 719 F.Supp.2d 419, 413 n. 12 (D.N.J. 2010) (citing Sanders v. English, 950 F.2d 1152, 1162-64 (5th Cir. 1992)). Here, Assistant Prosecutor Hancock was present outside the interrogation room during most, if not all, of the taking of the statement and he reviewed each page as they came out. (Pf. SOMF ¶ 141). At the time he determined to charge Plaintiff for the crimes against the children, he was unaware of the alleged oral confession given to Pfeiffer earlier that day. (Pf. SOMF ¶ 155). Thus, Assistant Prosecutor Hancock's used independent judgment in deciding to prosecute Plaintiff.

The parties also debate whether Assistant Prosecutor Hancock had probable cause to charge and arrest Plaintiff. It is well established that an arrest by a law enforcement officer without a warrant "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146 (2004). While "[t]he probable-cause standard is incapable of precise definition or quantification," Maryland v. Pringle, 540 U.S. 366, 371 (2003), all interpretations of probable cause require a belief of guilt that is reasonable, as opposed to certain, see, Hill v. California, 401 U.S. 797, 804 (1971) ("Sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. . . ."). See also, Wright v. City of Philadelphia, 409, F.3d 595, 601-602 (3d Cir. 2005).

Furthermore, "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Adams v. Williams, 407 U.S. 143, 149 (1972). Therefore, the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction. See, Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (holding that

9

probable cause only requires a "fair probability" that a person committed the relevant crime). An arrest was made with probable cause if "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964) (citations omitted). In other words, the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime. Johnson v. Campbell, 332 F.3d 809, 819 (3d Cir. 1994). It is irrelevant to the probable cause analysis what crime a suspect is eventually charged with, Barna v. City of Perth Amboy, 42 F.3d 199, 211 (3d Cir. 1994) ("Probable cause need only exist as to any offense that could be charged under the circumstances"), or whether a person is later acquitted of the crime for which she or he was arrested, Michigan v. DeFillippo, 443 U.S. 31, 36 (1979).

With regard to claims of fabrication of evidence, such a claim "is logically irrelevant to whether undisputed real evidence creates probable cause in the modern constitutional sense." Stolinski v. Pennypacker, 772 F.Supp.2d 626, 644 (D.N.J. 2011). To the contrary, a finding of probable cause can be made if the non-fabricated evidence demonstrates that the defendant committed the crime. Id.

In his brief, Plaintiff contends that Assistant Prosecutor Hancock only had probable cause to charge Plaintiff because of the Third Statement, and that Plaintiff would not have been arrested on November 16 absent the confession. (Pl. Opp. Br. 43, 45). However, Hancock stated that his determination to prosecute Plaintiff was based a number of pieces of information, including the results of the autopsy, Hancock's review of the crime scene, inconsistencies between Plaintiff's first and second statements, and the fact that the children were left in Plaintiff's care. (Pf. SOMF ¶ 154). Prosecutor Hancock's determination to prosecute Plaintiff was also based on the fact that Plaintiff had failed a

stipulated polygraph which was admissible into evidence. The polygraph demonstrated deception by Plaintiff as to the key non-pubic detail, that panties had been shoved into Tina Urquhart's mouth. Thus, there were facts independent of the tainted evidence, here, to establish probable cause. Plaintiff's signature and adoption of the Third Statement only served to reinforce Assistant Prosecutor Hancock's decision to prosecute Plaintiff, as Hancock believed that the signatures represented that Plaintiff was adopting the Third Statement voluntarily and that they were Plaintiff's words. (Hancock Dep., Vol. I, Exh P, p. 198-6 to 21).

Further, because Assistant Prosecutor Hancock independently made the decision to bring charges against Plaintiff, based on his belief that probable cause existed prior to the execution of the Third Statement by Plaintiff, Defendants did not interfere with Prosecutor Hancock's independent judgment. Even if, *arguendo*, Assistant Prosecutor Hancock lacked probable cause to arrest and charge Plaintiff, the fault lies with Hancock, not Pfeiffer and Lynch because they did not actually charge or arrest Plaintiff, nor did they influence Hancock's decision to charge Plaintiff prior to the execution of the Third Statement.

Accordingly, Pfeiffer and Lynch are entitled to qualified immunity with regard to Plaintiff's malicious prosecution claims.

### iii. Plaintiff's *Brady v. Maryland* Claim

Plaintiff also claims in Count I that Pfeiffer and Lynch violated his right to due process under Brady v. Maryland by failing to disclose exculpatory evidence.

The Supreme Court held in Brady v. Maryland that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87

(1963). "The Supreme Court has outlined a three-part test to determine if a Brady violation has occurred: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" Lewis v. Horn, 581 F.3d 92, 108 (3d Cir. 2009) (quoting Banks v. Dretke, 540 U.S. 668, 691 (2004)). See also, U.S. v. Brown, 595 f.3d 498, 509 (3d Cir. 2011).

The Court agrees with Pfeiffer's argument that he and Lynch did not violate clearly established law under Brady because the exculpatory information was already within Plaintiff's knowledge. By 1985, the Third Circuit had found that Brady did not apply to information within a criminal defendant's knowledge as there was no prejudice in the prosecution's failure to disclose the information. United States v. Dansker, 565 F.2d 1262, 1265 (3d Cir. 1977) (defense foreknowledge "may cure prosecutorial non-disclosure"), cert. dismissed, 434 U.S. 1052 (1978). See also, Government of Virgin Islands v. Martinez, 831 F.2d 46, 50 (3d Cir. 1987) (no Brady violation where officer failed to turn over statement by the defendant indicating he was acting in self-defense; there was no denial of due process as the information as the information was within the defendant's knowledge and could have been presented at trial if the defendant had been candid with his defense counsel).

Plaintiff incorrectly contends that Brady is a doctrine requiring disclosure of exculpatory information to the prosecutor so a decision to prosecute can be made. (Pl. Opp. Br. 54). However, the Brady doctrine is not intended to create a cause of action for criminal defendants who feel that they should not have suffered trial because of undisclosed exculpatory evidence; that is the purpose of a malicious prosecution claim. See, Graw v. Fantasky, 68 Fed. Appx. 378, 382-83 (3d Cir. 2003) (allegations that plaintiffs were forced to defend themselves against baseless criminal charges state § 1983 malicious prosecution claim under Fourth Amendment). Instead, Brady is intended to ensure a

criminal defendants right to due process, specifically by allowing the introduction of exculpatory evidence to a fact finder. See e.g., Stickler v. Greene, 527 U.S. 263, 289-290 (1999) (the issue is whether a criminal defendant received a fair trial in absence of the evidence). Brady is not a guarantee against a trial, it was malicious prosecution. Plaintiff was aware of the alleged fabricated reports, and what he did or did not say in the Third Statement. Plaintiff could have introduced this evidence during state court proceedings, and such failure was not due to any act of Pfeiffer or Lynch. Thus, both Pfeiffer and Lynch are entitled to Qualified Immunity.

### iv. Plaintiff's Fabrication of Evidence Claim

Plaintiff further claims in Count I that Pfeiffer and Lynch fabricated evidence in violation of his Fourteenth Amendment right to due process.

Plaintiff does not introduce any binding precedent to establish that the Third Circuit recognized a free-standing Fourteenth Amendment right to be free from fabrication of evidence. The Court disagrees with Plaintiff's argument that Yarris v. County of Delaware is instructive in showing that courts in the Third Circuit allow for a plaintiff to proceed on a fabrication of evidence claim, like the claim asserted by Plaintiff in Count I of the Complaint. 456 F.3d 129 (3d Cir. 2006). In Yarris, the court did not determine if a plaintiff had a free-standing Fourteenth Amendment right to be free from fabricated evidence. Rather, the court only determined if a prosecutor has absolute immunity for a Fourteenth Amendment claim that exculpatory evidence was destroyed. Id. at 136-37. At no point does the court address or hold that there is a clearly established Fourteenth Amendment right to be free from fabricated evidence. This was so because the plaintiff's complaint only generally alleged fabrication of a false confession, but did not specifically raise that said fabrication was a violation of the Fourteenth Amendment. Id. Thus the Third Circuit never addressed or found that fabrication of evidence was

independently actionable under the Fourteenth Amendment.

To the contrary, in the Third Circuit, fabrication of evidence has been found to implicate the Fourth Amendment under the malicious prosecution theory. See, Molina v. City of Lancaster, 159 F. Supp.2d 813, 820 (E.D.Pa. 2001) (noting that the "right to be free from the fabrication of evidence, falsifying documents, and malicious prosecution [under the Fourth Amendment] is clearly established."). See also, Warren v. Gelardi, 2009 WL 113450, *11 (D.N.J. 2009) (a plaintiff's claim for fabrication of evidence which did not note which provision of the constitution was violated construed to be a violation of Fourth Amendment under malicious prosecution theory). Though claims of fabricated evidence can form a claim for malicious prosecution or false arrest, the Third Circuit has not recognized an independent cause of action for fabrication of evidence, whether Fourteenth Amendment or otherwise. See, Criss v. Cosgrove, 2007 WL 542228, *8 (D.N.J. 2007) ("While the issue of whether there was false testimony or false arrest or unlawful search and seizure claim, such a claim standing alone does not implicate constitutionally protected right, for purposes of § 1983.") (citing Winn v. McQuillan et al., 390 F.Supp.2d 385, 392 (S.D.N.Y. 2005) (dismissing plaintiff's claim based upon false testimony before Grand Jury and jury trial for an alleged violation of plaintiff's 14th Amendment as the Court was not aware of any authority for such a claim standing alone implicated a constitutionally protected right)). See also, Johnson v. Knorr, 477 F.3d 75 (3d. Cir. 2007) (recognizing a fabrication of evidence claim as one for malicious prosecution).

Because Plaintiff makes no claim of a violation of a clearly established right under the Fourteenth Amendment with regard to fabrication of evidence, Pfeiffer and Lynch are entitled to Qualified Immunity.

### v. Remaining State Law Claims

Plaintiff has asserted state law claims against Pfeiffer and Lynch for malicious prosecution and

New Jersey Civil Rights Act violations. Because Pfeiffer and Lynch are entitled to Qualified Immunity for the federal claims, they are also entitled to Good Faith Immunity under N.J.S.A. § 59:3-3 which provides that "[a] public employee, specifically one engaged in law enforcement, will therefore enjoy immunity unless it is demonstrated that the employee did not act in good faith. <u>Dunlea v. Township of Belleville</u>, 349 N.J. Super. 506, 510-11 (App. Div. 2002).

For the reasons already discussed, Pfeiffer and Lynch did not violate any clearly established law. Accordingly, they are entitled to Good Faith Immunity.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motions for Summary Judgment are granted. An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       February  21 , 2013
Orig.:      Clerk
cc:         All Counsel of Record
            Hon. Joseph Disckson, U.S.M.J.
            File